**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                                        No. CR 11-2848 JB

PEDRO PABLO ROCHA-NUNEZ,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** comes before the Court on the Defendant's Motion for a Downward Departure or Variance, filed January 12, 2012 (Doc. 18)("Motion").  The Court held a sentencing hearing on February 3, 2012.  The primary issues are: (i) whether the Court should grant a downward departure under U.S.S.G. § 2L1.1 based on Defendant Pedro Pablo Rocha-Nunez' cultural assimilation into the United States; and (ii) whether the Court should vary downward on Rocha-Nunez' advisory guideline sentence.  The Court will deny the Motion.  Because the Court believes that Rocha-Nunez' circumstances do not take him out of the heartland of cases, the Court will deny his request for a downward departure.  Additionally, the Court will deny the request for a downward variance, because the Court believes that a sentence at the bottom of the advisory guidelines best reflects the factors in 18 U.S.C. § 3553(a).

**FACTUAL BACKGROUND**

      Rocha-Nunez was born in Durango, Mexico.  See Presentence Investigation Report ¶ 4, at 3, disclosed December 28, 2011 ("PSR").  He has two siblings that live in Mexico and three siblings that live in the United States.  See PSR ¶ 36, at 12.  Rocha-Nunez lived in Mexico until he was approximately twenty-one years old, at which time he moved to California.  See PSR ¶ 39, at 13.

Rocha-Nunez informed the United States Probation Office ("USPO") that he planned to remain in Mexico following his deportation to live with his current girlfriend and to work renting properties. See PSR ¶ 40, at 13. His current girlfriend has a seven-year-old child from a prior relationship that Rocha-Nunez has helped raise to some degree. See PSR ¶ 73, at 18. Rocha-Nunez has three children from a prior marriage who live in Albuquerque, New Mexico. See PSR ¶ 45, at 13-14. One of Rocha-Nunez' daughters recalled that he "was out of the house a lot" when she was young, and "was in and out of jail throughout her childhood," but stated that she wants her father in her life for support, particularly once she has children of her own. PSR ¶ 47, at 14. Rocha-Nunez reported that he worked for some construction companies in 2011 in Albuquerque and Odessa, Texas. See PSR ¶¶ 58-59, at 15. "[A] 2003 presentence report [prepared for federal illegal re-entry charges] reflects that he was employed from approximately 1995 to 2000" doing construction work in California. PSR ¶ 60, at 16.

In 1978, Rocha-Nunez pled guilty to a misdemeanor charge for petty theft. See PSR ¶ 22, at 5. In 1990, Rocha-Nunez pled guilty to misdemeanor charges of driving under the influence and not having proof of financial responsibility. See PSR ¶ 23, at 6. In 1995, Rocha-Nunez pled guilty to a felony charge of possession of a controlled substance for sale. See PSR ¶ 24, at 7. In 1995, Rocha-Nunez pled guilty to a misdemeanor charge of reckless driving. See PSR ¶ 25, at 7. In 1996, Rocha-Nunez pled guilty to two misdemeanor marijuana charges. See PSR ¶ 27, at 8. In 1996, Rocha-Nunez pled guilty to a felony charge of possession of a controlled substance for sale (methamphetamine). See PSR ¶ 28, at 9. In 2004, Rocha-Nunez pled guilty, before this Court, to a federal felony charge of re-entry of a deported alien previously convicted of an aggravated felony. See PSR ¶ 29, at 10. He received a sentence of 46-months imprisonment and a 2-year term of supervised release. See PSR ¶ 29, at 10.

On September 7, 2011, Rocha-Nunez was arrested by the Albuquerque Police Department for possession of a controlled substance. See PSR ¶ 4, at 3. Federal officials placed a detainer on Rocha-Nunez when they learned that "he was a citizen and national of Mexico and he did not have permission to be in or remain in the United States legally." PSR ¶ 4, at 3. He was then transferred to federal custody. See PSR ¶ 5, at 3.

**PROCEDURAL BACKGROUND**

Rocha-Nunez, pursuant to a Non-Standard Fast Track Plea Agreement Plea Agreement, filed November 9, 2011 (Doc. 15)("Plea Agreement"), pled guilty to the Information, filed November 9, 2011 (Doc. 12), charging him with a violation of 8 U.S.C. § 1326 (a) and (b), that being re-entry of a removed alien. The parties agreed to a 2-level reduction to his offense level pursuant to U.S.S.G. § 3E1.1(a) for acceptance of responsibility and, to the extent applicable, a 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). See Plea Agreement ¶ 6, at 2. The parties agreed, pursuant to the United States Attorney's Office fast-track plea agreement program and U.S.S.G. § 5K3.1, to a 1-level reduction; in exchange, Rocha-Nunez agreed to waive his appellate rights. See Plea Agreement ¶¶ 6, 12, at 2, 5-6. The parties reserved the right to "assert any position or argument with respect to the sentence to be imposed" other than with respect to the stipulations contained in the Plea Agreement. Plea Agreement ¶ 8, at 3.

On December 28, 2011, the United States Probation Office ("USPO") disclosed a PSR for Rocha-Nunez. The PSR calculates a base offense level of 8 pursuant to U.S.S.G. § 2L1.2(a). See PSR ¶ 12, at 4. The PSR applies a 16-level enhancement pursuant to U.S.S.G. § 2L1.1(b)(1)(A) based on Rocha-Nunez having been "previously deported . . . after a drug trafficking offense for which the sentence imposed exceeded 13 months." PSR ¶ 13, at 4-5. The PSR calculates Rocha-Nunez' adjusted offense level as 24, and his total offense level as 21 after a 3-level reduction for

acceptance of responsibility. See PSR ¶¶ 17-19, at 5. Based on the Plea Agreement, the PSR further reduces the total offense level to 20. See PSR ¶ 20, at 5. The PSR calculates Rocha-Nunez' criminal history category as IV based on 9 criminal history points. See PSR ¶ 30, at 11. The PSR calculates that an offense level of 20 and a criminal history category of IV establishes a sentencing range of 51 to 63 months. See PSR ¶ 46, at 12. The USPO concludes that a downward departure based on cultural assimilation under U.S.S.G. § 2L1.2 is not appropriate in light of his: (i) his arrest history; (ii) his inconsistent employment history; and (iii) his recent ties to Mexico including that he has a new girlfriend who lives in Mexico, whose daughter he helps raise, and that he has supported himself while he lived in Mexico recently by renting properties. See PSR ¶ 73, at 18.

On January 12, 2012, Rocha-Nunez filed his Motion. He asks the Court to grant him "a departure under the United States Sentencing Guidelines for cultural assimilation or a variance pursuant to 18 U.S.C. § 3553(a)." Motion at 1. He notes that cultural assimilation is a permissible basis upon which to depart on a defendant's sentence. See Motion at 3-4. He points out that he has three children in Albuquerque who are all United States citizens. See Motion at 5. He also asks the Court to consider that he has three siblings that live in the United States. See Motion at 5. He represents that he "can speak and read in the English language because he has spent the majority of his life not in Mexico but rather in the United States of America." Motion at 5. He does not specify the level of a departure or downward variance that he requests.

On January 13, 2012, the United States filed its response. See United States' Response to Defendant's Sentencing Memorandum (Doc. 19)("Response"). It argues that Rocha-Nunez has not sufficiently assimilated himself into American culture to warrant a downward departure or a variance. See Response at 2. The United States notes that Rocha-Nunez has significant criminal history that "spans a period from 1978 to 2011." Response at 4. The United States asserts that

"[t]he PSR author found no reason for a departure for cultural assimilation." Response at 4. The United States requests a sentence "within the guideline imprisonment range of 51 to 63 months." Response at 7. On January 20, 2012, the USPO issued an Addendum to the Presentence Report recommended that the Court deny the request for a downward departure for the same reasons it stated in the PSR. See Addendum to PSR at 1-2.

At the sentencing hearing on February 3, 2012, the parties agreed to the Court reducing his offense level a third level for acceptance of responsibility. See Transcript of Hearing at 8:16-9:3 (taken February 3, 2012)(Court, Tierney, Gandert)("Tr."). The United States also moved for a 1-level reduction on Rocha-Nunez' offense level pursuant to the fast-track program. See Tr. at 9:4-13 (Court, Tierney, Gandert). Rocha-Nunez noted that some of his convictions occurred approximately fifteen to sixteen years ago. See Tr. at 12:7-11 (Gandert). The United States emphasized that Rocha-Nunez has four felony convictions. See Tr. at 16:9-13 (Tierney). The Court then denied the request for a downward departure on the grounds of cultural assimilation. See Tr. at 17:24-20:6 (Court).

## LAW REGARDING U.S.S.G. § 2L1.2

When a person unlawfully enters or remains in the United States, U.S.S.G. § 2L1.2(a) provides for a base offense level of 8. See U.S.S.G. § 2L1.2(a). U.S.S.G. § 2L1.2(b)(1)(A) provides in relevant part:

> If the defendant previously was deported, or unlawfully remained in the United States, after . . . a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months . . . , increase by 16 levels if the conviction receives criminal history points under Chapter Four or by 12 levels if the conviction does not receive criminal history points.

U.S.S.G. § 2L1.2(b)(1)(A). U.S.S.G. § 2L1.2 application note 8 provides:

> There may be cases in which a downward departure may be appropriate on the basis

of cultural assimilation. Such a departure should be considered only in cases where (A) the defendant formed cultural ties primarily with the United States from having resided continuously in the United States from childhood, (B) those cultural ties provided the primary motivation for the defendant's illegal reentry or continued presence in the United States, and (C) such a departure is not likely to increase the risk to the public from further crimes of the defendant.

In determining whether such a departure is appropriate, the court should consider, among other things, (1) the age in childhood at which the defendant began residing continuously in the United States, (2) whether and for how long the defendant attended school in the United States, (3) the duration of the defendant's continued residence in the United States, (4) the duration of the defendant's presence outside the United States, (5) the nature and extent of the defendant's familial and cultural ties inside the United States, and the nature and extent of such ties outside the United States, (6) the seriousness of the defendant's criminal history, and (7) whether the defendant engaged in additional criminal activity after illegally reentering the United States.

U.S.S.G. § 2L1.2 cmt. n.8.

## ANALYSIS

The Court will deny the Motion. Because the Court believes that Rocha-Nunez' circumstances do not take him out of the heartland of cases, the Court will deny his request for a downward departure. Additionally, the Court will deny the request for a downward variance, because the Court believes that a sentence at the bottom of the advisory guidelines best reflects the factors in 18 U.S.C. § 3553(a).

### I.     THE COURT WILL NOT DEPART DOWNWARD ON THE BASIS OF CULTURAL ASSIMILATION.

The Court does not believe that a departure under application note 8 for U.S.S.G. § 2L1.2 is appropriate under the circumstances of this case. Rocha-Nunez lived in Mexico until he was twenty-one years old. He informed the USPO that he plans to remain in Mexico following his deportation and to live with his current girlfriend, whose child he has helped raise. He has been making a living in Mexico renting properties. He has significant ties outside the United States. In

addition, he has engaged in a variety of criminal activity for a long period of time and came into the custody of the United States based on drug charges he faced in Albuquerque.  Departing downward on the basis of cultural assimilation, in light of his significant criminal history, would pose a danger to society.  Even at his age, approximately fifty-four, he has continued to engage in criminal activity. Before this current charge, he has received three felony charges, including felony drug charges and felony charges for illegal re-entry after committing an aggravated felony.  He was also arrested in Albuquerque in September 2011 on charges for possession of a controlled substance.

       The Court acknowledges that Rocha-Nunez has some ties to the United States.  It appears he has lived here much of his adult life and that his children from a prior marriage live predominantly in Albuquerque.  He also has some siblings who live in the United States, although he also has siblings who live in Mexico.  Nevertheless, he stated that he does not intend to come back to the United States and that he prefers to remain in Mexico.  Additionally, he has sporadic employment history here in the United States.  He never attended school here in the United States and is divorced from his wife who lived in the United States until she died in 2006.  He also engaged in illegal activity after he illegally re-entered the country.  After reviewing the facts before it, the Court does not believe that the relevant factors listed in U.S.S.G. § 2L1.2 application note 8 counsel in favor of a departure.  While the Court recognizes that a downward departure on the basis of cultural assimilation is permissible, the Court does not believe one is warranted under the facts of this case.  This case does not fall outside of the heartland of immigration cases that this district sees and that the federal courts in the nation see.  He came to the United States when he was an adult -- and was not brought here by his parents when he was a small child.  He knew he was breaking the United States' immigration laws the first time he came here.  Even if a departure were warranted, the Court would exercise its discretion not to depart, because this case remains within the heartland

of immigration cases.

## II.    THE COURT WILL NOT VARY DOWNWARD ON ROCHA-NUNEZ' SENTENCE.

The Court does not believe that a downward variance is appropriate under the facts of this case. There being no objections to the factual findings in the PSR, the Court adopts them as its own. There being no disputes as to the PSR's guideline calculation, the Court adopts the PSR's sentencing calculation as its own.

Pursuant to rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure and U.S.S.G. § 5K3.1 of the sentencing guidelines, the Court accepts the plea agreement, which stipulates to an offense level of 20 pursuant to the fast-track program. The Court is satisfied that the agreed-on offense level departs for justifiable reasons. The plea agreement is pursuant to a nonstandard fast-track plea agreement. In section 401(m)(2)(B) of the PROTECT Act of 2003, Pub. L. No. 109-21, § 401(m)(2)(B), 117 Stat. 650, 675, Congress approved early disposition or fast-track programs if certain conditions are met. The Court believes that these conditions are met in this case, and this departure is in the lower part of the range of departures that Congress allowed. The Court's sentence will be consistent with the Plea Agreement. The Court adopts the sentencing calculations in the PSR as its own. A criminal offense level of 20 and a criminal history category of IV produces a guideline sentence of 51 to 63 months.

The Court notes that Rocha-Nunez illegally re-entered the United States after having been convicted of a drug trafficking offense. The Court has carefully considered the parties' arguments and the circumstances of this case. The Court has considered the guideline range for the applicable category of offense committed by the applicable category of defendant. The Court believes that the punishment that the guidelines set forth at the bottom of the applicable guideline range -- 51 months -- is appropriate for Rocha-Nunez' offense. Rocha-Nunez relies on many of the same arguments

he made when he requested a downward departure as the basis for his argument for a downward variance. This conviction now results in Rocha-Nunez' fourth felony conviction. The Court is conscious that some of his convictions are relatively old. Nevertheless, Rocha-Nunez was also arrested and brought into federal custody for the current charge after state officials arrested him for possession of a controlled substance, specifically crack cocaine. He does not appear to be refraining from criminal activity even though he is now approximately fifty-four years old. He also has a weak employment history here in the United States and has strong ties to Mexico. The Court does not discount that one of his daughters wants him to be here in the United States, particularly now that her mother has died. Nevertheless, many defendants charged with immigration offenses have some family connections to the United States. The Court is having trouble distinguishing this case from the many other immigration cases it sees. The Court usually looks for something more than just the presence of family in the United States to justify a variance and does not believe that there are additional circumstances here that justify a variance. Furthermore, Rocha-Nunez was released from federal custody in late 2006 following a 46-month sentence for illegal re-entry. That sentence did not discourage him from re-entering the country again shortly after his release from federal custody and then from committing drug crimes. There is no sound reason to give him a sentence lower than 46 months given that a 46-month sentence did not deter him from committing more immigration and drug offenses.

      The Court has considered the guidelines, but, in arriving at its sentence, has taken into account not only the guidelines but other sentencing goals. The Court believes that a sentence of 51 months is adequate to reflect Rocha-Nunez' criminal history and the seriousness of Rocha-Nunez' crime. This sentence adequately reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, avoids

unwarranted sentencing disparities among similarly situated defendants, and otherwise fully reflects each of the factors embodied in 18 U.S.C. § 3553(a).  Because Rocha-Nunez has some serious criminal history and because the Court is imposing a sentence within the guidelines, the Court believes that the sentence adequately reflects the seriousness of the offense and promotes respect for the law.  Given that Rocha-Nunez has received a 1-level departure under the fast track program and because the sentence is at the low end of the guideline range, the Court believes that the sentence provides just punishment.  Because this is the largest sentence Rocha-Nunez has received for an immigration offense, the Court believes that it affords adequate deterrence to both Rocha-Nunez individually and to the public generally.  Given that the sentence is relatively high compared to other immigration offenses and because the Court believes that the sentence accounts for Rocha-Nunez' significant criminal history, the Court concludes that the sentence protects the public.  Because the sentence is within the applicable guideline range, the Court believes that the sentence avoids unwarranted sentencing disparities among similarly situated defendants.  While the Court's task, as a district court, is not to arrive at a reasonable sentence -- it is to come up with one that reflects the factors in 18 U.S.C. § 3553(a), see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." (citation omitted)) -- the Court believes this sentence is reasonable.  And perhaps most important in this calculation, the Court believes that this sentence is sufficient, but not greater than necessary to comply with the purposes of punishment Congress set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (codified as amended in scattered sections of 18 U.S.C.).  The Court sentences Rocha-Nunez to 51-months imprisonment.

**IT IS ORDERED** that the Defendant's Motion for a Downward Departure or Variance, filed January 12, 2012 (Doc. 18), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
  United States Attorney
Charles Barth
  Assistant United States Attorney
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Joseph W. Gandert
  Assistant Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

    *Attorney for the Defendant*